**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

TANYA W.,

                         Plaintiff,                        No. 3:17-CV-0624
                                                               (CFH)

         v.

NANCY A. BERRYHILL,

                                Defendant.

_____

**APPEARANCES:**                                 **OF COUNSEL:**

Lachman, Gorton Law Firm           PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, New York 13761-0089
Attorney for plaintiff

Social Security Administration        PADMA GHATAGE, ESQ.
Office of Regional General Counsel,   Special Assistant U.S. Attorney
Region II
26 Federal Plaza, Rm. 3904
New York, New York 10278
Attorney for Defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER

     Plaintiff Tanya W. brings this action pursuant to 42 U.S.C. § 405(g) seeking

review of a decision by the Commissioner of Social Security ("Commissioner") denying

her application for supplemental security income ("SSI") payments.  Dkt. No. 1

("Compl.").[1] Plaintiff moves for a finding of disability or remand for a further hearing, and the Commissioner cross-moves for a judgment on the pleadings. Dkt. Nos. 9, 13. Plaintiff filed a supplemental reply. Dkt. No. 18. For the following reasons, plaintiff's motion is granted in part and denied in part, and the Commissioner's motion is granted in part and denied in part.

## I. Relevant Background

## A. Factual Background

At the time of the hearing, plaintiff was a thirty-four-year-old female who resided in an apartment with her three children. T. 5, 19.[2] Plaintiff completed tenth grade, and received her GED. Id. at 6. Plaintiff previously worked as a teacher's assistant in a daycare program and as an aide for two disabled children. Id. at 7.

## B. Procedural Background

On December 2, 2013, plaintiff protectively filed an application for SSI. T. 144-49. Plaintiff alleged disability beginning on April 1, 2013. Id. at 144. Plaintiff's application for SSI was initially denied on February 25, 2014. Id. at 69-75. Plaintiff requested a hearing, and a hearing was held on December 3, 2015 before

---

[1]  Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18. Dkt. No. 5.

[2]  "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner. Dkt. No. 8. Citations refer to the pagination in the bottom right-hand corner of the administrative transcript, not the pagination generated by CM/ECF.

Administrative Law Judge ("ALJ") Bruce S. Fein. Id. at 1-25. ALJ Fein determined that plaintiff "ha[d] not been under a disability within the meaning of the Social Security Act since December 2, 2013, the date the application was filed." Id. at 36. The Appeals Council denied plaintiff's request for a review, making the ALJ's findings the final determination of the Commissioner. Id. at 26-29. Plaintiff commenced this action on June 12, 2017. See Compl.

## C. ALJ's Decision

Applying the five-step disability sequential evaluation, the ALJ determined that plaintiff had not engaged in substantial gainful activity since December 2, 2013, the application date. T. 38. The ALJ found at step two that plaintiff had the severe impairments of lumbosacral degenerative disc disease, fibromyalgia ("FM"), post right shoulder surgery, depression, and post-traumatic stress disorder. Id. At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 38. Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to

> perform a range of sedentary work as defined in 20 CFR 416.967(a) that includes the ability to lift and/or carry ten pounds occasionally, sit a total of six hours with normal breaks, and stand and/or walk a total of two hours with normal breaks during an eight-hour workday. She can occasionally climb, balance, stoop, kneel, crouch and crawl. She also requires a low stress job, which is defined as involving only occasional decision-making, occasional changes in work setting, and occasional use of judgment.

3

Id. at 40.  At step four, the ALJ found that plaintiff had no relevant past work.  Id. at 43.

At step five, the ALJ found that considering the plaintiff's age, education, work

experience, and RFC, there were jobs that exist in significant numbers in the national

economy that plaintiff could perform.  Id. at 44.  Thus, the ALJ determined that plaintiff

"ha[d] not been under a disability, as defined in the Social Security Act, since December

2, 2013, the date the application."  Id. at 45.

## II. Legal Standard

### A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not

determine de novo whether an individual is disabled.  See 42 U.S.C. §§ 405(g),

1388(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.

1990).  Rather, the Commissioner's determination will only be reversed if the correct

legal standards were not applied, or it was not supported by substantial evidence.  See

Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987); Berry v. Schweiker, 675 F.2d 464,

467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that

in the record one can find "such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion."  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir.

2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations

omitted)).  The substantial evidence standard is "a very deferential standard of review . .

. . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable

factfinder would have to conclude otherwise."  Brault v. Soc. Sec. Admin., Comm'r, 683

F.3d 443, 448 (2d Cir. 2012) (internal quotations marks omitted).  Where there is

reasonable doubt as to whether the Commissioner applied the proper legal standards,

the decision should not be affirmed even though the ultimate conclusion is arguably

supported by substantial evidence.  See Martone v. Apfel, 70 F. Supp. 2d 145, 148

(N.D.N.Y. 1999) (citing Johnson, 817 F.2d at 986).  However, if the correct legal

standards were applied and the ALJ's finding is supported by substantial evidence,

such finding must be sustained "even where substantial evidence may support the

plaintiff's position and despite that the court's independent analysis of the evidence may

differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y.

1992) (citation omitted).


## B. Determination of Disability

"Every individual who is under a disability shall be entitled to a disability . . . benefit   . . .

." 42 U.S.C. § 423(a)(1).  Disability is defined as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment . . . which has lasted or can be expected to last for a continuous period of

not less than 12 months."  Id. § 423(d)(1)(A).  A medically-determinable impairment is

an affliction that is so severe that it renders an individual unable to continue with his or

her previous work or any other employment that may be available to him or her based

on his or her age, education, and work experience.  Id. § 423(d)(2)(A).  Such an

impairment must be supported by "medically acceptable clinical and laboratory

diagnostic techniques."  Id. § 423(d)(3).  Additionally, the severity of the impairments is

"based [upon] objective medical facts, diagnoses or medical opinions inferable from the facts, subjective complaints of pain or disability, and educational background, age, and work experience." Ventura v. Barnhart, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry, 675 F.2d at 467 (spacing added). The plaintiff bears the initial burden of proof to establish each of the first four steps. See DeChirico v. Callahan, 134 F.3d 1177, 1179-

80 (2d Cir. 1998) (citing <u>Berry</u>, 675 F.2d at 467). If the inquiry progress to the fifth step, the burden shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful employment somewhere. <u>Id.</u> at 1180 (citing <u>Berry</u>, 675 F.2d at 467).

### III. The Parties' Arguments

Plaintiff first argues that the ALJ's RFC determination is not supported by substantial evidence. Dkt. No. 9 at 11-20. Specifically, plaintiff contends that the ALJ (1) erred in failing to include any limitations related to handling; (2) failed to properly account for pain resulting from plaintiff's FM and other impairments; (3) improperly rejected plaintiff's treating provider's opinion concerning plaintiff's need to change positions, time off task, and absenteeism; and (4) failed to properly consider any reaching limitations associated with plaintiff's shoulders, neck, back, and FM. <u>See id.</u> Plaintiff also argues that the ALJ's step five determination is not supported by substantial evidence. <u>Id.</u> at 20-21. Conversely, the Commissioner argues that (1) the ALJ properly evaluated the medical evidence and assessed the RFC, and (2) the step five analysis is supported by substantial evidence. Dkt. No. 13 at 15-23.

### IV. Analysis

### A. RFC Determination

RFC describes what a claimant is capable of doing despite his or her impairments, considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations beyond the symptoms. <u>See</u> <u>Martone</u>, 70 F. Supp. 2d

at 150; 20 C.F.R. §§ 404.1545, 416.945. "In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capabilities are not sufficient." Martone, 70 F. Supp. 2d at 150. The ALJ then uses the RFC to determine whether the claimant can perform his or her past relevant work. See New York v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); 20 C.F.R. §§ 404.1545, 416.960. If it is determined that a claimant cannot perform past relevant work, "the burden shifts to the Commissioner to determine whether there is other work which the claimant could perform." Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999).

When assessing a claimant's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of social security disability. See also Frey ex rel. A.O. v. Astrue, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); Little v. Colvin, No. 14-CV-0063, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted). "An ALJ should consider 'all medical opinions received regarding the claimant.'" Reider v. Colvin, No. 15-CV-6517, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting Spielberg v. Barnhart, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005)); see also SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The factors for considering opinions from

non-treating medical sources are the same as those for assessing treating sources,

with the consideration of whether the source examined the claimant or not replacing the

consideration of the treatment relationship between the source and the claimant. 20

C.F.R. §§ 404.1527(c)(1)-(6).

The ALJ found that plaintiff could

> perform a range of sedentary work as defined in 20 CFR
> 416.967(a) that includes the ability to lift and/or carry ten
> pounds occasionally, sit a total of six hours with normal breaks,
> and stand and/or walk a total of two hours with normal breaks
> during an eight-hour workday. She can occasionally climb,
> balance, stoop, kneel, crouch and crawl. She also requires a
> low stress job, which is defined as involving only occasional
> decision-making, occasional changes in work setting, and
> occasional use of judgment.

T. 40. The regulations define sedentary work as work that

> involves lifting no more than 10 pounds at a time and
> occasionally lifting or carrying articles like docket files, ledgers,
> and small tools. Although a sedentary job is defined as one
> which involves sitting, a certain amount of walking and
> standing is often necessary in carrying out job duties. Jobs are
> sedentary if walking and standing are required occasionally
> and other sedentary criteria are met.

20 C.F.R. § 416.967(a).

### 1. Handling Limitations[3]

Plaintiff argues that he ALJ erred by "failing to include, or even discuss, in the

RFC determination any limitations relating to [p]laintiff's ability to handle." Dkt. No. 9 at

---

[3] "Handling" is defined as "seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands." TITLES II & XVI: CAPABILITY TO DO OTHER WORK-THE MEDICAL-VOCATIONAL RULES AS A FRAMEWORK FOR EVALUATING SOLELY NONEXERTIONAL IMPAIRMENTS, SSR 85-15, (S.S.A. 1985)

11.  The Commissioner contends that "[p]laintiff ignores the fact that Dr. Figueroa expressly stated 'limitations on the handling of objects was [sic] because of the recent carpal tunnel surgery', as the ALJ noted." Dkt. No. 13 at 17.  At the February 2014 examination, Dr. Figueroa noted that plaintiff appeared to be in no acute distress.  Id. at 316.  As her examination pertains to a handling limitation, Dr. Figueroa indicated that plaintiff used no assistive devices, needed no help changing for the examination or getting on and off the exam table.  Id.  Dr. Figueroa found that plaintiff had shoulder forward elevation limited to 75 degrees bilateral and abduction was limited to 75 degrees bilateral.  Id. at 317.  Plaintiff had full range of motion "adduction, internal rotation, and external rotation."  Id.  Plaintiff also had full range of motion in her elbows and wrists.  Id.  Plaintiff's Tinel's test was positive and her Phalen's test was negative. Id.  As to trigger points for her FM, plaintiff had two in occiput, two in her buttocks, two in her hips, and two in her clavicle for a total of eight points.  Id.  Plaintiff's hand and finger dexterity were intact, and her grip strength was 5/5 bilaterally.  Id.

Based on her examination, Dr. Figueora diagnosed plaintiff with (1) FM; (2) restless leg syndrome; (3) sleep apnea; (4) bilateral hand carpal tunnel; and (5) hypertension. T. 317.   She opined that plaintiff's prognosis was fair.  Id.  Dr. Figueora opined that plaintiff "did have some limitations as far as bending, walking, climbing stairs, kneeling, and also handling objects."  Id.  As to plaintiff's limitations handling objects, Dr. Figueora qualified that "[t]he handling of the objects will be because of the recent carpal tunnel surgery."  Id.   The ALJ gave "considerable weight" to Dr. Figueroa's February 2014 consultative examination "as it [was] generally

consistent with her examination findings." Id. at 41.

Despite plaintiff's argument to the contrary, the ALJ did discuss Dr. Figueora's handling assessment, and noted that Dr. Figueora opined that these limitations were attributed to plaintiff's recent carpal tunnel surgery. T. 41, 317. Plaintiff's medical records indicate that plaintiff underwent carpal tunnel surgery for her left hand on October 8, 2013, approximately four months before the February 2014 consultative examination. See id. at 245-46. Therefore, Dr. Figueora's opinion does not explicitly support a limitation in handling due a finger or hand impairment; rather, the opinion seems to suggest that plaintiff's limitations are due to her recent surgery.

Plaintiff cites to no record evidence connecting continued pain, numbness, and weakness in her hands and fingers to any ongoing functional limitations. Although plaintiff provides various record citations wherein she complains of pain and/or numbness in her hands and wrists, only one of these citations refers to pain after plaintiff's October 2014 carpal tunnel surgery — notably, the citation is to Dr. Figueora's consultative examination. See Dkt. No. 9 at 11. To the extent that plaintiff suggests that pain in her hands, fingers, or wrists may be associated with her FM diagnosis, it is well-settled that "[a] mere diagnosis, however, does not necessarily support a finding of limitations in a claimant's RFC." Colbert v. Comm'r of Soc. Sec., 313 F. Supp. 3d 562, 581 (S.D.N.Y. 2018) (citing Aguilar v. Colvin, No. 3:15-CV-643 (DFM), 2017 WL 1199726, at *7 (D. Conn. Mar. 31, 2017) (upholding RFC determination where plaintiff "cites only to the diagnoses of these conditions"); Durgan v. Astrue, No. 12-CV-279 (DNH/CFH), 2013 WL 1122568, at *3 (N.D.N.Y. Feb. 19, 2013) ("A diagnosis alone is

insufficient to establish a severe impairment as instead, the plaintiff must show that the medically determinable impairments significantly limit the ability to engage in basic work activities.") (citing 20 C.F.R. § 404.1521(b)); see also Rivers v. Astrue, 280 F. App'x 20, 22 (2d Cir. 2008) (summary order) ("[M]ere diagnosis of fibromyalgia without a finding as to the severity of symptoms and limitations does not mandate a finding of disability.")).

Moreover, although plaintiff reported "dropping stuff" and weakness in her hands at the February 2014 consultative examination, id. at 316, plaintiff testified at the oral hearing in December 2015 that her carpal tunnel was "doing pretty good," and that she felt "a little bit of pain here and there" due to the weather. Id. at 22-23. Absent plaintiff's testimony of continued pain in her hands and fingers, "the ALJ could properly decline to attribute . . . handling limitations to" plaintiff associated with pain in her hands and/or fingers. Colbert, 313 F. Supp. 3d at 581 (citing inter alia Skardinski v. Colvin, No. 15-CV-6486 CJS, 2017 WL 840401, at *8 (W.D.N.Y. Mar. 3, 2017) ("To the extent that the ALJ declined to expressly list Plaintiff's nonexertional limitations in the RFC finding, after concluding that such impairments had a negligible effect on Plaintiff's ability to work, the Court believes that such determination is supported by substantial evidence."); May v. Colvin, No. 13-CV-06011 (MAT), 2014 WL 3546297, at *5 (W.D.N.Y. July 10, 2014) ("The Court finds the ALJ committed no legal error in determining that Plaintiff's abdominal pain was not a severe impairment since there was no medical evidence in the record that his abdominal pain resulted in functional limitations.")). The Court notes that "[i]f evidence is susceptible to more than one

12

rational interpretation, the Commissioner's conclusion must be upheld." <u>McIntyre v. Colvin</u>, 758 F.3d 146, 149 (2d Cir. 2014).

Thus, the Court concludes that the ALJ's determination not to include a handling limitation in the RFC is supported by substantial evidence. As such, the Court concludes that the ALJ did not err in failing to include a handling limitation, and remand is inappropriate on this ground.

## 2. Pain Pursuant to FM and Other Impairments

Plaintiff argues that the ALJ failed to properly account for pain resulting from plaintiff's FM and other impairments. Dkt. No. 9 at 12-14. The Commissioner contends that the ALJ properly assessed plaintiff's FM and other causes of pain and set forth an RFC determination that encompassed her impairments. <u>See</u> Dkt. No. 13 at 20-21. The ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause some of her alleged symptoms[,] [h]owever, the objective medical and opinion evidence of record reflects greater functional abilities than have been alleged." T. 43. Plaintiff contends that this determination "is error as it represents a misunderstanding of FM and fails to properly assess limitations caused by [p]laintiff's pain." Dkt. No. 9 at 13. Plaintiff further claims that the ALJ's failure to mention plaintiff's FM or related pain is "error warranting remand." <u>Id.</u> The Court agrees.

FM is defined by the Commissioner as "a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least three months." SSR 12-2p, Titles II and XVI:

Evaluation of Fibromyalgia, 2012 WL 3104869, at *3 (S.S.A. July 25, 2012).

The Court acknowledges that FM is not per se disabling, see Prince v. Astrue, 514 F. App'x 18, 20 (2d Cir. 2013) (summary order) ("Mere diagnosis of fibromyalgia without a finding as to the severity of symptoms and limitations does not mandate a finding of disability[.]") (quoting Rivers, 280 F. App'x at 22). Although the ALJ found that plaintiff's FM was a severe condition, which implicitly suggests an acknowledgment that objective findings are not needed for a FM diagnosis, he discredits any limitations caused by plaintiff's pain because "objective medical and opinion evidence . . . reflects greater functionality." T. 43. This Court has held that "discrediting treating source medical opinions and subjective testimony concerning limiting effects of fibromyalgia simply because such evidence is not corroborated by objective medical evidence is error." Campbell v. Colvin, No. 5:13-CV-451 (GLS/ESH), 2015 WL 73763, at *12 (N.D.N.Y. Jan. 6, 2015) (citing Green-Younger v. Barnhart, 335 F.3d 99, 108 (2d Cir. 2003)). Although the ALJ determined at step two that plaintiff's FM was a severe impairment, in his RFC analysis he only makes one reference to plaintiff's FM, stating that Dr. Figueroa indicated that "eight positive fibromyalgia trigger points were detected in her occiput, buttock, hip and clavicle regions." T. 41. The ALJ seemed to qualify this assessment by stating, "[h]owever, she retained full range of motion in her cervical spine, elbows, wrists and ankles, and straight leg raising was negative bilaterally." Id. Thus, the ALJ seems to suggest that plaintiff's generally normal findings regarding her cervical spine, elbows, wrists, and ankles somehow tempers any pain associated with her FM. This is a fundamental misunderstanding of FM.

> Persons afflicted with fibromyalgia may experience severe and unremitting musculoskeletal pain, accompanied by stiffness and fatigue due to sleep disturbances, yet have normal physical examinations, e.g., full range of motion, no joint swelling, normal muscle strength and normal neurological reactions. Thus, lack of positive, objective clinical findings does not rule out the presence of fibromyalgia, but may, instead, serve to confirm its diagnosis.

Campbell, 2015 WL 73763, at *5 (citing Preston v. Secretary of Health & Human

Servs., 854 F.2d 815, 818 (6th Cir. 1988)).

> [R]ejecting a treating source's opinion regarding the functional limitations of a fibromyalgia plaintiff based only on a perceived lack of objective evidence, or requiring medical evidence beyond that needed for a diagnosis, can be legal error. However, the opinion of a treating physician on the nature or severity of a plaintiff's impairments is binding only if it is supported by medical evidence and not contradicted by substantial evidence in the record.

Brown v. Comm'r of Soc. Sec., No. 3:16-CV-0941 (WBC), 2017 WL 3034311, at *7

(N.D.N.Y. July 17, 2017) (citing Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008);

Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013)).

Here, the record indicates that plaintiff was diagnosed with FM in December

2013, with eighteen out of eighteen tender points. T. 303-04. She began treatment for

FM in January 2014, and, at the initial appointment, rated her pain seven out of ten. Id.

at 331-32. Plaintiff's medical records indicate musculoskeletal pain ratings of nine out

of ten on various occasions throughout 2014. See id. at 373, 378, 384, 387, 389, 394,

406. In December 2014, records note that plaintiff's pain "occurs constantly and is

worsening." Id. at 373. In September 2015, plaintiff's records indicated that her pain

still "occurred constantly," was "aggravated by touch," and that there were "no relieving

15

factors." Id. at 355.  Symptoms associated with her pain included "decreased mobility, difficulty initiating sleep, joint instability, joint tenderness, limping, locking, nocturnal awakening, nocturnal pain, popping and weakness." Id. at 355.  Plaintiff found some relief at nighttime through medication.  Id.  Plaintiff also testified as to the limitations presented by her FM at the oral hearing.  See id. at 9-10, 12-16.

The ALJ's RFC assessment fails to mention the pain associated with plaintiff's FM.  See T. 40-43.  Although the ALJ states that plaintiff's "daily activities indicate that she should be able to sustain a sedentary level of exertion," id. at 43,  "it is well-settled that the performance of basic daily activities does not necessarily contradict allegations of disability, as people should not be penalized for enduring the pain of their disability in order to care for themselves." Battease v. Comm'r of Soc. Sec., No. 3:15-CV-867 (ATB), 2016 WL 3824146, at *7 (N.D.N.Y. July 13, 2016) (internal quotations omitted) (citing Stoesser v. Comm'r of Soc. Sec., No. 08-CV-643 (GLS/VEB), 2011 WL 381949, at *6-7 (N.D.N.Y. Jan. 19, 2011) (concluding that the plaintiff's daily activities – including cleaning the house, watching television and playing video games, cooking simple meals, and shopping for groceries – did not support the ALJ's finding that plaintiff could perform sedentary work over an eight-hour workday in light of plaintiff's testimony that he could not sit for more than 30 minutes to an hour without standing up), recommendation and order adopted 2011 WL 381941 (N.D.N.Y. Feb. 3, 2011)).  Thus, the Court concludes that the ALJ failed to account for plaintiff's pain associated with her FM in making his RFC determination.  As such, remand on this ground is appropriate.

### 3. Family Nurse Practitioner ("FNP") Miller and Need to Change Positions, Time Off Task, and Absenteeism

Plaintiff argues that the ALJ improperly rejected FNP Miller's opinion concerning plaintiff's need to change positions, time off task, and absenteeism. Dkt. No. 9 at 15-19. The Commissioner contends that the ALJ properly decided not to incorporate certain limitations from FNP Miller's opinion in the RFC. Dkt. No. 13 at 18. FNP Miller completed a document entitled "Broome County DDS Medical Assessment Form (Physical)" which assessed plaintiff's physical limitations based on FNP Miller's treatment history with plaintiff. T. 415-17. FNP Miller diagnosed plaintiff with FM and a vitamin D deficiency, and noted that plaintiff currently was on three medications. Id. at 415. She opined that plaintiff could walk, stand, and bend for zero to two hours maximum per day. Id. Plaintiff had no limits on sitting. Id. FNP Miller further indicated that plaintiff needed to periodically alternate walking, standing, bending or sitting during the work day every twenty to thirty minutes. Id. She further noted that plaintiff could only lift and carry a maximum of nine pounds. Id. Based on these physical limitations, FNP Miller opined that plaintiff could "work with limitations" for twelve months or more. Id.

In the "questionnaire" portion of the worksheet, FNP Miller indicated that plaintiff's FM, vitamin D deficiency, and degenerative disc disease and the medications associated with those conditions would cause plaintiff pain, fatigue, diminished concentration, diminished work pace, and would require her to rest at work. Id. at 416. Thus, she opined that plaintiff would be off task for more than 10 percent but less than

15 percent of a regular work-day.  Id.  FNP Miller indicated that plaintiff's conditions would be expected to produce good days and bad days, and that she would likely miss work two days per month.  Id. at 417.  She noted that plaintiff could sit for approximately eight hours out of an eight-hour work day, and should change positions every thirty minutes.  Id.

The ALJ granted "some weight" to FNP Miller's assessment because "she [was] a treating source."  T. 42.  The ALJ stated that he failed to "find sufficient support in the record for adopted her opinions on [plaintiff] needing to change positions every 30 minutes, being off-task or missing work."  Id.  The ALJ notes that plaintiff testified that she is able to sit for more than thirty minutes, and is "able to keep up with the daily demands of operating and maintaining a household and taking care of three children."  Id.

The Commissioner argues that plaintiff has failed to provide evidence that "normal breaks" are not sufficient in meeting FNP Miller's opinion that plaintiff needed breaks every thirty minutes while standing.  Dkt. No. 13 at 18.   The Court disagrees. The need to periodically alternate walking, standing, bending or sitting during the work day every twenty to thirty minutes "seems inconsistent with the ability to sit for six hours in an eight-hour workday with what are vaguely described as 'normal breaks.'"  Harris v. Comm'r of Soc. Sec., No. 14-CV-5123 PKC, 2015 WL 5774865, at *13 (E.D.N.Y. Sept. 29, 2015).  Moreover, FNP Miller's limitations with regard to the need to change positions, being off task, and missing work due to her FM and degenerative disc disease is consistent with other substantial evidence in the record.  As plaintiff details,

> [s]uch evidence includes, but is not limited to, significant daytime sleepiness, T[ ]. 224, 399, 406 (fatigue), moderately severe restless leg syndrome, including leg pain and tingling, T[ ]. 291, 299, 328, widespread musculoskeletal pain, T[ ]. 295, 373, 378, 384, 387, 389, 394, 406, pain up to a 9/10. Tr. 292, 373, 378, 384, 387, 389, 394, 406, extremity weakness, gait disturbance, and numbness in extremities, T[ ]. 293, malaise and fatigue and an inability to perform her activities of daily living without extreme fatigue, T[ ]. 331, pain aggravated by walking, movement, standing, sitting, and over use, T[ ]. 355, 364, 369, 373, 378, 382, 387, 392, 397, 402, fatigue, joint instability, joint tenderness, tingling in her legs and weakness, T[ ]. 373, 375, 387, 390, 405, 399, 406, muscle spasms, T[ ]. 366, 399, etc.

Dkt. No. 9 at 16. Such limitations are also consistent with Dr. Loomis' assessment that plaintiff had "moderate impairment in her ability to maintain attention and concentration [and] maintain a regular schedule[.]" T. 309. As previously discussed, the ALJ failed to properly assess plaintiff's FM and the pain and limitations associated with the condition. Accordingly, the Court finds that the ALJ erred in assessing FNP Miller's opinion concerning plaintiff's need to change positions, being off task, and missing work, as substantial evidence in the record supports her opinion. As such, remand on this ground is necessary.

### 4. Reaching Limitations[4]

Plaintiff argues that the ALJ failed to properly consider any reaching limitations associated with plaintiff's shoulders, neck, back, and FM. Dkt. No. 9 at 19-20. Defendants contend that Dr. Figueroa did not assess reaching limitations in her medical

---

[4] "Reaching" is defined as "extending the hands and arms in any direction." SSR 85-15.

source statement, and, therefore, "the ALJ properly decided not to include [reaching] limitations in the RFC."  The Court agrees.  Dr. Figueora's medical source statement includes "some limitations as far as bending, walking, climbing stairs, kneeling, and also handling objects," but does not account for reaching limitations.  T. 317.  It is the ALJ's responsibility to weigh the evidence and resolve material conflicts within the record; the ALJ reasonably relied on Dr. Figueroa's opinion, which, after physically examining plaintiff, failed to include any reaching limitations.  Id.; see Bliss v. Colvin, No. 13-CV-1086, 2015 WL 457643, at *7 (N.D.N.Y. Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); Petell v. Comm'r of Soc. Sec., No. 12-CV-1596, 2014 WL 1123477, at *10 (N.D.N.Y. Mar. 21, 2014) (same).  As such, the Court finds that the ALJ properly assessed Dr. Figueora's opinion, and the failure to include a reaching limitation was not error.

### B. Step Five Determination

Plaintiff argues that the ALJ's step five determination is not based on substantial evidence because "it was error for the ALJ to rely solely on the Grids as the this case presents significant non-exertional limitations."  Dkt. No. 9 at 21.  The Commissioner contends that the ALJ did not err in failing to obtain the testimony of a vocational expert at step five.  Dkt. No. 13 at 21-22.

"At step five, the Commissioner is required to consult a vocational expert when the claimant possesses non-exertional impairments that significantly limit the range of

work permitted by his exertional limitations." Eralte v. Colvin, No. 14 Civ. 1745(JCF), 2014 WL 7330441, at *14 (S.D.N.Y. Dec. 23, 2014) (quotations omitted).

> Thus, the "mere existence" of a non-exertional impairment will not automatically require the testimony of a vocational expert; instead, the non-exertional limitation must cause an "additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity."

Id. (quoting Bapp v. Bowen, 802 F.2d 601, 605-06 (2d Cir. 1986)).  In his decision, the ALJ acknowledged that he had found non-exertional limitations, and analyzed the extent to which those non-exertional limitations reduced the occupational base of "administratively noticed unskilled sedentary jobs."  T. 44.  The ALJ ultimately determined that plaintiff's non-exertional limitations did not significantly erode plaintiff's available occupational base, and, therefore, concluded that additional testimony and evidence was not needed to make a disability determination.  See id. at 44-45.

Because the Court concludes that the ALJ did not err in failing to include reaching and handling limitations in the RFC, the Court similarly finds that the ALJ did not err in relying on the vocational guidelines to find that there were jobs in the national economy for plaintiff to perform.  "However, pain is also a nonexertional impairment." Casselbury v. Colvin, 90 F. Supp. 3d 81, 96 (W.D.N.Y. 2015) (citing Rosa v. Callahan, 168 F.3d 72, 78 n.2 (2d Cir. 1999) ("A nonexertional limitation is one imposed by the claimant's impairments that affect her ability to meet the requirements of jobs other than strength demands, and includes manipulative impairments and pain.").  Because the ALJ found that plaintiff's FM was a medically determinable impairment that impacted plaintiff's RFC, "then the pain associated with Plaintiff's fibromyalgia would be a

nonexertional impairment with the potential to have more than a negligible impact on Plaintiff's ability to work." Id. As such, the ALJ cannot rely solely on the guidelines in making his step five determination. See id. Accordingly, remand is required to assess plaintiff's pain in conjunction with the step five analysis.

## V. Conclusion

**WHEREFORE**, for the reasons state above, it is hereby

**ORDERED**, that plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **GRANTED IN PART and DENIED IN PART**: the motion is granted insofar as the matter will be remanded to the Commissioner for the reasons stated herein, but denied insofar as the Court determines that the ALJ properly determined plaintiff's RFC as to handling and reaching limitations; and it is further

**ORDERED**, that the Commissioner's motion for judgment on the pleadings (Dkt. No. 13) is **DENIED IN PART and GRANTED IN PART**: the motion is granted insofar as the Court determines that the ALJ did not err in failing to include handling and reaching limitations in the RFC; and it is further

**ORDERED**, that this case be **REMANDED**, pursuant to Sentence Four of 42 U.S.C. § 405(g) for proceedings consistent with this Memorandum-Decision and Order.

**IT IS SO ORDERED**.

Dated:    January 22, 2019
             Albany, New York

Christian F. Hummel
U.S. Magistrate Judge